UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
B.P. and A.P., individually and on behalf of D.P.,

                            Plaintiffs,

                          -against-

The New York City Department of Education,

                          Defendant.
-------------------------------------------------------------X

DECISION AND ORDER

11-CV-2141 (WFK) (MDG)

## DECISION

B.P. and A.P., individually and on behalf of D.P. (the "Plaintiffs") seek relief against Defendant the New York City Department of Education (the "Defendant") pursuant to the Individuals with Disabilities Act, 20 U.S.C. §§ 1400, et seq. (the "IDEA").

Plaintiffs contend Defendant failed to offer infant D.P. a free appropriate public education ("FAPE") within the meaning of the IDEA. Plaintiffs contend the Individualized Education Program ("IEP") Defendant proposed for D.P. for the 2009–2010 school year was inappropriate, the private placement parents A.P. and B.P. selected for D.P. was appropriate and the equities favor private tuition reimbursement. Plaintiffs seek reversal of the decisions of the New York State Impartial Hearing Officer ("IHO") and The State Education Department State Review Officer ("SRO") denying tuition reimbursement.

For the reasons stated below, this Court finds the education Defendant offered to D.P. for the 2009–2010 school year to be appropriate under the IDEA. Therefore, Plaintiffs' motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.

1

# I. The IDEA

The IDEA "offers federal funds to states that develop plans to assure 'all children with disabilities' " a FAPE. *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003); 20 U.S.C. § 1412(a). The FAPE must include "special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 122 (2d Cir. 1998) (internal quotations omitted).

The IDEA mandates each child's FAPE be administered pursuant to an individualized education program ("IEP"). 20 U.S.C. § 1414(d). To provide a FAPE the IEP need not furnish "every special service necessary to maximize each handicapped child's potential." *Bd. Of Educ. v. Rowley*, 458 U.S. 176, 199 (1982). "Rather, a school district fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *Cerra v. Pawling Cent. Sch. Dist.*, 427 F.3d 186, 195 (2d Cir. 2005) (internal quotations omitted).

The IDEA permits parents unilaterally to place their child in private school and to seek tuition reimbursement where the local school district IEP placement does not provide the child with a FAPE. 20 U.S.C. § 1412(a)(10)(C). The court held in *P.K. and T.K. ex rel. S.K. v. New York City Dep't of Educ.* tuition reimbursement is warranted where "(1) the school district has provided an inadequate or inappropriate placement; (2) the parents' selected program is appropriate, such that the private program meets the student's special educational needs; and (3) the equities favor the parents." No. 09-cv-1472, 2011 WL 3625317, at *3 (E.D.N.Y. Aug. 15, 2011) (Johnson, J), citing *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359, 369–70

(1985); *Florence Cnty. Sch. Dist. Four v. Carter*, 510 U.S. 7, 12–13 (1993) (the "*Burlington-Carter* Test").

Parents who wish to challenge an IEP may do so through a hearing before an IHO appointed by the local school district. 20 U.S.C. § 1415(f). The "decision of an IHO may be appealed to an SRO . . . [which] may in turn be challenged in either state or federal court." *Grim*, 346 F.3d at 380; 20 U.S.C. § 1415(g), (i); N.Y. Educ. Law § 4404(1). The "pendency" provisions of both the IDEA and New York State Education law require that a student shall remain in his or her then current educational placement pending final disposition of, *inter alia*, a challenge to a child's IEP. 20 U.S.C. § 1415(j); N.Y. Educ. Law § 4404(4); *Mackey v. Bd. Of Educ. for the Arlington Cent. Sch. Dist.*, 386 F.3d 158 (2d Cir. 2004).

In an IDEA case the test on a motion for summary judgment is not whether there are "disputed issues of fact, but rather, whether the administrative record, together with any additional evidence, establishes that there has been compliance with the IDEA's processes and that the child's education needs have been appropriately addressed." *S.W. v. New York City Dep't of Educ.*, 646 F. Supp. 2d 346, 352 (S.D.N.Y. 2009) (Koeltl, J). The Court is to accord the administrative proceedings "due weight" and not to "substitute [its] notions of sound educational policy for those of the school authorities which [it reviews]." *Rowley*, 458 U.S. at 206. The United States Supreme Court has "previously cautioned that courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy." *Id.* at 208 (internal quotations omitted).

## II. Facts and Procedural Posture

D.P. attended the Mary McDowell Center for Learning ("Mary McDowell"), a private school for children with learning disabilities, from 2005 through the 2009–2010 school year. Dr. Buffy Smith ("Dr. Smith"), a clinical psychologist, evaluated D.P. over the course of seven days in 2008. Dr. Smith diagnosed D.P. with Attention Deficit/Hyperactivity Disorder ("ADHD") and a Learning Disorder. D.P. further encountered difficulty in "decoding, comprehension, spelling, writing, math computation . . . word problems . . . organization, stamina, frustration tolerance, stress and anxiety." Findings of Fact and Decision of the IHO ("IHO Decision"), at 8.

The Committee on Special Education ("CSE") convened on May 6, 2009 to evaluate D.P.'s educational needs and to develop an IEP for D.P. for the 2009–2010 academic year. The CSE team included Charles Rubino, a New York State Certified Social Worker, Shirley Picula, the local school district school psychologist, Brenda Longo, a parent member, Ann Parise, a general education teacher, Plaintiff A.P., and Jennifer Goldfrank, the teacher for D.P. from Mary McDowell who participated by telephone for the final third of the CSE meeting.

The CSE team considered the following items: (i) the results of the evaluation of D.P. conducted by Dr. Smith (the "Smith Report"); (ii) a classroom observation conducted by Ms. Parise; (iii) a social history update; (iv) a mid-year progress report from Mary McDowell; (v) Speech and Language Therapy ("SL") reports from Mary McDowell; and (vi) Occupational Therapy ("OT") reports from Mary McDowell.

The IEP was drafted after the May 6, 2009 meeting. It recommended placement in a special class in a community school with a staffing ratio of 12:1:1, or twelve students, one teacher, and one paraprofessional. Less restrictive alternatives including a 12:1 ratio and a class

4

that was integrated with the general student population had been discussed and rejected at the May 6, 2009 meeting.

Plaintiffs received a final notice of recommendation ("FNR") on July 17, 2009. The FNR offered a placement in PS 11, a local public school. Because school was not in session in July of 2009, no site visit was possible at that time. Plaintiffs requested additional information from the local district about the recommended placement by letter dated July 31, 2009. Deeming the information they received in response insufficient to make a determination as to the appropriateness of the placement, Plaintiffs requested additional information and notified the school district of their intention to send D.P. to Mary McDowell in the interim by letter dated September 9, 2009.

Plaintiffs visited PS 11 in October 2009. Plaintiffs met with the school principal, Alotta Wrighton, and the teacher of the recommended class, Joan Bain. PS 11 had a population of approximately 570 students during the 2009–2010 year. The recommended class had eight students, one teacher, and one paraprofessional. Defendant contends, of the eight students, one was speech and language impaired, one was emotionally disturbed, five were learning disabled and one was "borderline" mentally retarded ("MR").

Defendant contends, in terms of math, one of the students in the recommended class was performing at the first grade level, three were performing at the second grade level, three were performing at the third grade level and one was performing at the fourth grade level. Defendant further contends, in terms of reading, one student was performing at the first grade level, three were performing at the second grade level, and four were performing at the third grade level. At the time the Smith Report was drafted, D.P. was performing at the second grade level in math and the first grade level in reading.

5

After visiting PS 11, Plaintiffs considered the recommended placement inappropriate to the needs of D.P. Plaintiffs kept D.P. enrolled in Mary McDowell and, on February 18, 2010, filed an impartial hearing request with Defendant. Plaintiffs alleged the IEP was invalid, the CSE team was inappropriately constituted and failed to review adequate evaluatory and documentary material to justify its recommendation, and asserted the composition of the class and the methodologies used were inappropriate. Plaintiffs alleged Defendant failed to provide D.P. with a FAPE for the 2009–2010 school year and sought reimbursement of tuition costs for Mary McDowell.

The IHO held hearings over five days between April and August of 2010. The IHO issued its forty-one-page findings of Fact and Decision on October 6, 2010. The IHO granted the pendency payment request Plaintiffs had made in their impartial hearing request and ordered Defendant to reimburse all tuition paid by Plaintiffs until this case is disposed of by final order. However, the IHO found, to the extent Plaintiffs alleged procedural errors in the development of the IEP, such errors had neither denied B.P. and A.P. an opportunity to participate meaningfully in the development of the IEP nor denied D.P. a FAPE. The IHO further found the IEP to be reasonably calculated to enable D.P. to receive an educational benefit and concluded D.P. had been offered a FAPE. The IHO denied Plaintiffs' request for tuition reimbursement.

Plaintiffs appealed the decision of the IHO to the SRO. After a thorough analysis, the SRO affirmed the IHO. However, the SRO found the IHO had incorrectly considered several of the procedural arguments. The SRO found Plaintiffs failed to object adequately to the composition of the CSE team, the sufficiency of the CSE team review, and whether or not B.P. and A.P. were accorded an opportunity to participate meaningfully in the development of the IEP

in their February 18, 2010 impartial hearing request. The SRO found those arguments to be outside of the scope of its review and declined to consider them.

Plaintiffs appeal from the decision of the SRO. Plaintiffs seek a finding that D.P. was denied a FAPE. Plaintiffs seek reimbursement of any tuition not already recovered by them pursuant to the pendency order of the IHO. The Court has considered these issues on the record before it, including the letters constituting post-argument submissions by Lauren Baum, Esq., counsel for the Plaintiffs, dated January 3, 2012 and Gloria Yi, Esq., Counsel for the Defendant, dated January 4, 2012.

### III. The Parties' Arguments

Plaintiffs argue the IEP was procedurally and substantially defective and the resulting placement recommendation was inappropriate to the needs of D.P. Plaintiffs also argue the placement at Mary McDowell is appropriate. Finally, Plaintiffs argue the equities favor tuition reimbursement. Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment ("Plaintiff's Memo"), 1-25; Plaintiffs' Reply Memorandum of Law in Support of Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Plaintiffs' Reply Memo"), 2-18.

Defendant argues Plaintiffs waived certain procedural arguments and alleges the IEP and placement recommendation were appropriate to the needs of D.P. Defendant contends Mary McDowell, by contrast, is not appropriate in light of the IEP. Finally, Defendant contends the equities disfavor tuition reimbursement. Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment and in Support of Defendant's Motion for Summary Judgment ("Defendant's Memo"), 1, 5–33; Defendant's Reply Memorandum of Law in Support of Motion for Summary Judgment ("Defendant's Reply Memo"), 1–10.

### IV. Plaintiffs Waived Procedural Objections Not Raised in Their Impartial Hearing Request

Defendant contends Plaintiffs waived the opportunity to argue they and Ms. Goldfrank were denied meaningful participation in the development of the IEP and the CSE team did not consider adequate evaluative material because Plaintiffs did not raise these arguments in their impartial hearing request. Defendant's Memo, pp. 6–8; Defendant's Reply Memo, 2–3.

Defendant is correct. The scope of the inquiry of the IHO, and therefore the SRO and this Court, is limited to matters either raised in the Plaintiffs' impartial hearing request or agreed to by Defendant. 20 U.S.C. § 1415(f)(3)(B); 34 C.F.R. § 300.511(d); 8 N.Y.C.R.R. 200.5(j)(1)(ii).

In their impartial hearing request Plaintiffs alleged the "CSE review team was invalidly constituted and failed to adequately consider current, sufficient and appropriate documentary material to justify its recommendations." Impartial Hearing Ex. A, 1. Plaintiffs raised their argument that the CSE team did not consider adequate evaluative material. However, Plaintiffs could only have raised their argument regarding their and Ms. Goldfrank's participation in the development of the IEP to the extent it challenges the composition of the CSE team. Because Plaintiffs only challenge the composition of the CSE team with respect to Ann Parise, Plaintiffs have waived the argument they and Ms. Goldfrank were denied meaningful participation in the development of the IEP.

Plaintiffs argue the general reservation of rights in their impartial hearing request preserves additional procedural arguments. That argument fails. A conclusion to the contrary would impermissibly expand the scope of the review of this Court beyond its statutory authority. 20 U.S.C. § 1415(f)(3)(B); 34 C.F.R. § 300.511(d); 8 N.Y.C.R.R. 200.5(j)(1)(ii).

## V. The IEP Was Not Procedurally Defective

Plaintiffs contend the IEP team was procedurally defective in three respects. First, Plaintiffs argue the CSE team was invalidly constituted because it did not include an appropriate general education teacher. Second, Plaintiffs argue the CSE team failed to consider adequate evaluative material. Third, Plaintiffs argue they and Ms. Goldfrank were denied meaningful participation in the development of the IEP.

The facts underlying each of the three procedural arguments fail to demonstrate procedural defects. Even if they had, to render an IEP legally defective, procedural defects must either (i) impede a child's right to a FAPE; (ii) significantly impede the parents' opportunity to participate in the decision-making process; or (iii) cause a deprivation educational benefits. 20 U.S.C. § 1415(f)(3)(E)(ii). This Court finds Plaintiffs did meaningfully participate in the development of the IEP and this Court defers to the determination in the prior administrative proceedings that Defendant offered D.P. a FAPE (*see infra* §§ V(3), VI). The procedural arguments of the Plaintiffs are rejected.

*1. The CSE Team Included a General Education Teacher*

The Defendant complied with its obligation to include a general education teacher if the child is, or may be, participating in the general education environment on the CSE team. 20 U.S.C. § 1414(d)(1)(B)(ii); 8 N.Y.C.R.R. 200.3(a)(1)(ii); N.Y. Educ. Law § 4402(b)(1)(a).

D.P. was not in a general education environment at the time of the May 6, 2009 meeting, but the CSE team considered alternatives to the recommended placement that included some level of integration with the general education environment. Defendant ultimately recommended a placement that included integration with the general student population for lunch and recess. Therefore, the CSE team must have included a general education teacher.

Plaintiffs concede Ann Parise is, in fact, a general education teacher. Defendant's Rule 56.1 Statement of Facts, ¶ 14; Response to Defendant's Rule 56.1 Statement of Facts, ¶ 14. To the extent Plaintiffs argue Ms. Parise was not an appropriate general education teacher because Defendant did not present evidence she was teaching in a fourth or fifth grade environment at the time of the May 6 meeting, Plaintiffs request more than the law requires. *M.N. v. New York City Dep't of Educ., Region 9 (Dist. 2)*, 700 F. Supp. 2d 356, 365 (S.D.N.Y. 2010) (Sullivan, J). The CSE team was not invalidly constituted for lack of a general education teacher.

*2. The CSE Team Considered Adequate Evaluative Material*

Plaintiffs argue the CSE team failed to consider adequate evaluative material in developing the IEP. Plaintiffs contend the "CSE must consider the results of the most recent evaluation of the child, the strengths of the child, and the academic, developmental and functional needs of the child, in addition to the parents' concerns for the enhancement of the child's education." Plaintiffs' Memo, 4. However, Plaintiffs admit this is precisely what the CSE team in fact did. Response to Defendant's Rule 56.1 Statement of Facts, ¶ 17, admitting the CSE team "based D.P.'s IEP on a classroom observation conducted by Ms. Parise, a social history update, [the Smith Report], a Mary McDowell mid-year progress report, and Mary McDowell OT and SL therapy reports, and that these documents were created less than a year before the May 6, 2009 meeting[.]"

Plaintiffs further contend "since Ms. Goldfrank was participating by telephone and no [impartial hearing] testimony was presented to show she had access to the documentary material considered by the CSE," the fact that only Ms. Parise's classroom observation was read into the May 6 meeting record "impeded the CSE's ability to have a full discussion of D.P.'s needs." Plaintiffs' Memo, 5. Plaintiffs are mistaken. A.P. testified Ms. Goldfrank was a "full

participant" in giving information regarding the learning needs of D.P. and had reviewed both the Smith Report and the Mary McDowell progress report. Impartial Hearing Transcript, 541:12-23. The CSE team therefore did not fail to consider adequate evaluative material, nor was Ms. Goldfrank's participation significantly compromised because she participated by telephone.

3. *Plaintiffs' Third Procedural Argument Does Not Warrant Summary Judgment in Their Favor.*

Plaintiffs argue they and Ms. Goldfrank were denied the opportunity to participate meaningfully in the development of the IEP. The Court rejects that argument as it concerns Ms. Goldfrank. The record demonstrates Ms. Goldfrank reviewed the Smith Report and the Mary McDowell progress report prior to the May 6, 2009 meeting, the classroom evaluation of D.P. was read into the May 6, 2009 meeting record, and Ms. Goldfrank was a full participant in providing information about the learning needs of D.P. to the CSE team.

Plaintiffs argue they were denied meaningful participation in the development of the IEP because the IEP was not drafted at the CSE meeting, they did not receive the IEP until July of 2009 and the IEP did not reflect everything Plaintiffs desired. Plaintiffs' Memo, 6; Plaintiffs' Reply Memo, 5. Because Plaintiffs did not raise the issue of whether their participation in the development of the IEP was meaningful in their impartial hearing request, the Court need not decide it here. *See supra* § IV. However, the disposition of this case would not change if the Court were to have reached and to have considered the arguments of the Plaintiffs.

The IDEA permits parents to play a "significant role" in the development of their child's IEP. *Winkelman ex rel Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 524 (2007). "A parent's right to a 'significant role' in the process simply requires that the CSE [team] consider the parent's concerns and revise the IEP when appropriate." *R.K. ex rel R.K. v. New York City*

11

*Dep't of Educ.*, No. 09-cv-4478, 2011 WL 1131492, at *14 (E.D.N.Y. Jan. 21, 2011) (Mann, MJ), citing *Winkelman*, 550 U.S. at 524.

The record undermines Plaintiffs' assertion they were denied meaningful participation in the development of the IEP. A.P. was a member of the CSE team who attended the May 6 meeting. Defendant's Rule 56.1 Statement of Facts, ¶ 14; Response to Defendant's Rule 56.1 Statement of Facts, ¶ 14. While Plaintiffs complain the CSE team did not draft the IEP at the May 6 meeting, Plaintiffs concede the law does not require them to have done so. Plaintiffs' Memo, 6. As it concerns Plaintiffs' argument that their alleged lack of meaningful participation is evidenced by deficiencies in the goals the IEP establishes for D.P., their "real objection is not that [they] lacked the opportunity to participate in the [development of the IEP], but rather that the IEP ultimately did not incorporate their concerns." *R.K.*, 2011 WL 1131492, at *14. Plaintiffs' objection does not sound in the procedure utilized for developing the IEP, but in the substance of the IEP itself. The Court defers to the prior administrative proceedings on matters of substantive educational policy.

Plaintiffs have not shown their receipt of the IEP for the first time in July constitutes a procedural defect under the IDEA. Rather, "school districts must only ensure that a child's IEP is in effect by the beginning of the school year and that the parents are provided a copy." *Cerra*, 427 F.3d at 194, citing 34 C.F.R. §§ 300.342(a), 300.345(f). Although the Plaintiffs might have "preferred to receive the IEP sooner, and we are sympathetic to the frustration they undoubtedly felt in not receiving it sooner . . . [Defendant] fulfilled its legal obligations by providing the IEP before the first day of school." *Cerra*, 427 F. 3d at 194. Even if the Court were to consider Plaintiffs' remaining procedural arguments, they would not provide a basis for the Court to grant Plaintiffs' motion for summary judgment.

## VI. The IEP Was Not Substantially Defective

Plaintiffs argue the IEP failed to address adequately Plaintiff's needs and the placement made thereunder was inappropriate. Plaintiffs objected to the size of PS 11, the fact D.P. would interact with a general population of 200 students during lunch and recess, the composition of the class, the teaching methodologies to be used therein, and the fact the classroom was not equipped with a frequency modulation ("FM") device. Plaintiffs contend, whereas the classrooms at Mary McDowell are pre-equipped with FM devices, D.P. would have to wear an individual device in the recommended placement at PS 11. Plaintiffs allege the individual device would distract D.P., differentiate him from his peers, and therefore be inappropriate to his needs. Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment, 9–20.

Plaintiffs' arguments address matters of educational policy to which this Court must accord the administrative proceedings below due weight. *Bd. Of Educ. v. Rowley*, 458 U.S. 176, 206 (1982). Deference is particularly appropriate where, as here, the decision of the SRO demonstrates a careful and thorough examination of the record. *Walczak v. Florida Union Free Sch. Dist.*, 142 F.3d 119, 129 (2d Cir. 1998).

"The requirement that each child be afforded a FAPE does not guarantee that the 'district provide [] everything that might be thought desirable by loving parents.'" *D.B. ex rel. K.B. v. New York City Dep't of Educ.*, No. 10-cv-6183, 2011 WL 4916435, at *12 (S.D.N.Y. Oct. 12, 2011) (Sweet, J), quoting *Walczak*, 142 F.3d at 132. Nor must the IEP furnish "every special service necessary to maximize each handicapped child's potential." *Rowley*, 458 U.S. at 199. Rather, the IEP must provide a "basic floor of opportunity consisting of services that are individually designed to provide educational benefit to a child with a disability." *Grim v. Rhinebeck Cent. Sch. Dist.*, 346 F.3d 377, 379 (2d Cir. 2003) (internal quotations omitted).

Indeed, a school district "fulfills its substantive obligations under the IDEA if it provides an IEP that is likely to produce progress, not regression, and if the IEP affords the student with an opportunity greater than mere trivial advancement." *A.H. ex rel. J.H. v. New York City Dep't of Educ.*, 394 Fed. Appx. 718, 721 (2d Cir. 2010) (internal quotations omitted).

The IHO and SRO each found Defendant fulfilled its obligations under the IDEA. Their findings are supported by the record and this Court therefore credits them.

Relying on the impartial hearing testimony of Mr. Rubino, the IEP, the Mary McDowell Progress Report and the Smith Report, the IHO found the "annual goals and objectives in the student's IEP were directly linked to the student's identified areas of need and contained sufficient specificity by which to guide instruction, intervention, and how to evaluate and measure the student's progress." IHO Decision, 8–11, 17, 37–8; Impartial Hearing Transcript 133:7–136:19. The IHO found Ms. Bain, the teacher in the recommended placement, both experienced and well-qualified. IHO Decision, 39. The IHO permissibly credited Ms. Bain's testimony and teaching experience and found the curriculum and teaching methodology appropriate to the needs of D.P. *Id.*, 13–16, 39–40; Impartial Hearing Transcript 243:14–25, 269:22–274:14. The IHO found, although Plaintiffs called witnesses to dispute the appropriateness of Ms. Bain's math curriculum, the witnesses' "experience was too attenuated in time to credibly do so." IHO Decision, 29–31, 39. The IHO found the other students in the class were "well in line with D.P.'s levels" except for one student who was awaiting placement elsewhere. *Id.*, 12–13, 23, 39–40; Impartial Hearing Transcript, 253:7–257:16. The IHO found Defendant had offered D.P. a FAPE. IHO Decision, 41.

The impartial hearing record supported the conclusion of the IHO. The SRO affirmed the determination of the IHO. The SRO found the "student's annual goals demonstrated the

requisite alignment with the student's needs and that the hearing record sufficiently supports a finding that the annual goals and management needs section of the [IEP] appropriately addressed the student's deficits in the areas of attention, organization, stamina, frustration tolerance and anxiety." SRO Decision, 8–9, 20. The SRO further found that "the district's recommended 12:1+1 special class was an appropriate educational placement" for D.P. and the other students in the class were a "suitable grouping" for D.P. *Id.*, 4, 9, 11, 19–20.

## VII. Conclusion

This Court has followed the law and accorded due deference to the administrative proceedings it reviewed. This Court finds the Individualized Education Program of D.P. was reasonably calculated to result in an educational benefit to D.P. in satisfaction of obligations borne by the Defendant under the IDEA. The motion for summary judgment by the Defendant The New York City Department of Education is therefore hereby GRANTED. The motion for summary judgment by the Plaintiffs is therefore hereby DENIED.

**SO ORDERED**

Dated: Brooklyn, New York
      January 6, 2012

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge